IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID W. NANCE & PRISCILLA LYNN NANCE, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil No. 1:12-cv-01064 |
| UNITED STATES OF AMERICA | ) ) ) | |
| Defendant. | ) ) ) | |

**UNITED STATES' BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

EDWARD L. STANTON, III
United States Attorney

KATHRYN KENEALLY
Assistant Attorney General

CHRISTOPHER J. WILLIAMSON
Trial Attorney, Tax Division
United States Department of Justice
P.O. Box 227
Ben Franklin Station
Washington, DC 20044
Tel:  (202) 307-2250
Fax: (202) 514-6866
christopher.j.williamson@usdoj.gov

*Counsel for the United States*

8036930.1

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS………...............…………………………………………….i

TABLE OF AUTHORITIES…………….................…………………………………...ii

INTRODUCTION………………………….............……………………………..….1

STATEMENT OF THE CASE....................................................................................3

      *A.*    *The Internal Revenue Service's Offshore Voluntary Compliance Initiative*..........3

      *B.*    *The Nances' Offshore Accounts*...................................................................5

      *C.*    *Internal Revenue Service Letter 3679*..................................................5

      *D.*    *Closing Agreement On Final Determination Of Tax Liability And Specific Matters*........................................................................................7

      *E.*    *Penalty Assessment*....................................................................9

STANDARD OF REVIEW.........................................................................9

ARGUMENT....................................................................................10

I.    THE 2003 FORM 3520-A WAS NOT "PART AND PARCEL" OF ANY AGREEMENT BETWEEN PLAINTIFFS AND THE SERVICE..............................10

II.    PLAINTIFFS DID NOT HAVE REASONABLE CAUSE TO LATE FILE THE 2003 FORM 3520-A BECAUSE THEY FAILED TO COMPLY WITH THE TERMS OF THE OVCI, LETTER 3679, AND THE CLOSING AGREEMENT.......15

CONCLUSION...................................................................................19

8036930.1

# TABLE OF AUTHORITIES

**Cases**                                                                    Page(s)

Ashcroft v. Iqbal, 556 U.S.662 (2009).............................................................9

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).............................................9

In re Spendthrift Farm, 931 F.2d 405 (6th Cir. 1991)........................................11

Marathon Oil Co. v. United States, 42 Fed. Cl. 267 (Ct. Fed. Cl. 1998)...........10,11

Rink v. Comm'r, 47 F.3d 168 (6th Cir. 1995)...............................................10-12

Sidell v. Comm'r, 225 F.3d 103 (1st Cir. 2000)..............................................17-18

United States v. Boyle, 469 U.S. 241 (1985).....................................................14

United States v. National Steel Corp., 75 F.3d 1146 (7th Cir. 1996)...................11

Williams v. Curtin, 631 F.3d 380 (6th Cir. 2011)..............................................9

**Statutes**

26 U.S.C. § 6048.............................................................................................passim

26 U.S.C. § 6663...................................................................................................8

26 U.S.C. § 6677(b).......................................................................................passim

26 U.S.C. § 7121.............................................................................................4,10

**Rules and Regulations**

26 C.F.R. § 301.7121-1 (1993)........................................................................13

Rev. Proc. 68-16.............................................................................................11,13

Rev. Proc. 2003-11........................................................................................passim

Fed. R. Civ. P. 8(a)(2)........................................................................................9

8036930.1

Fed. R. Civ. P. 12(b)(6)....................................................................................................9,18

**Other Materials**

Restatement (Second) of Contracts § 36(2) (1981)........................................................12

Restatement (Second) of Contracts § 214 (1979)..........................................................11

8036930.1

## INTRODUCTION

Plaintiffs David W. Nance and Priscilla Lynn Nance seek the refund of a penalty assessed against them under 26 U.S.C. § 6677(b) for failure to timely file their 2003 Form 3520-A (Annual Informational Return of Foreign Trust With a U.S. Owner).  Under 26 U.S.C. § 6048(b), taxpayers are required to report ownership of foreign trusts on Form 3520-A.  The Nances' 2003 Form 3520-A was due March 15, 2004, but was not filed until November 4, 2004.  Consequently, the Service imposed a late-filing penalty equal to 5% of the gross reportable amount indicated on the late-filed Form 3520-A (*i.e.*, $156,478.00).  Plaintiffs refund claim must be dismissed because they have failed to state any claim that would entitle them to the return of the assessed penalty.

The Nances participated in several offshore financial arrangements that over the course of several years illegally reduced the amount of their income subject to United States income taxes.  On November 25, 2003, the Internal Revenue Service sent Letter 3679 to the Nances, which informed them that they were preliminarily eligible to participate in the Service's Offshore Voluntary Compliance Initiative ("OVCI").  Under the terms of the OVCI, the Nances were offered the opportunity to reduce their exposure to penalties in connection with their offshore financial arrangements, in exchange for providing detailed information regarding their offshore holdings.  To be eligible to participate in the program, the Nances were required:  (1) to submit, within 150 days of receipt of the letter, certain requested information, including amended or

8036930.1

delinquent Forms 3520-A; and (2) to enter specific matters closing agreement (Form 906) with the Service regarding their offshore financial arrangements.

The Nances elected to participate in the OVCI.  They submitted certain information requested, including delinquent Forms 3520-A for 1997 through 2003.  The Nances also submitted their 2003 Form 3520-A.  The Nances negotiated and entered a specific matters closing agreement dated April 12, 2006, which by its stated terms applied to the tax years ending December 31, 1997 through December 31, 2002 (the "Closing Agreement").  The agreement did not mention the 2003 tax year.

The Nances allege two claims in support of their refund request.  *First*, the Nances contend that the 2003 tax year was "part and parcel" of their agreement with the Service as set forth in Letter 3679 and the Closing Agreement.  (<u>See</u> Amend. Compl., ¶58(b).)  *Second*, the Nances contend that no penalty should have been imposed because they had reasonable cause to late file given representations made by the Service in the OVCI, the Letter 3679, and the Closing Agreement.  (<u>See</u> <u>id.</u>, ¶58(g)-(h).)

Neither of these claims has merit.  The 2003 tax year was not "part and parcel" of any agreement between the Nances and the Service because the Closing Agreement did not apply to the 2003 tax year.  Furthermore, the Nances cannot be said to have reasonably relied on the OVCI, Letter 3679, and the Closing Agreement because they did not comply with the express terms of those documents.  Specifically, the Nances failed to file the 2003 Form 3520-A within the 150-day period required by the OVCI and

8036930.1

Letter 3679.  The Nances, therefore, have failed to state a claim upon which relief can be granted, and their complaint must be dismissed.

## STATEMENT OF THE CASE

*A.*     *The Internal Revenue Service's Offshore Voluntary Compliance Initiative*

1.     In Revenue Procedure 2003-11, the Service announced the OVCI.

2.     The OVCI was created for taxpayers, who underreported their United States income tax liability through financial arrangements that in any manner rely, among other things, on the use of offshore financial arrangements with entities such as foreign banks, corporations, or trusts.  See Rev. Proc. 2003-11, § 1.01.

3.     The OVCI, as set forth in Revenue Procedure 2003-11, "afford[ed] taxpayers that have used these devices an opportunity to avoid certain penalties that would otherwise apply."  Id. at § 1.02.

4.     Revenue Procedure 2003-11 provided that, if the taxpayer complied with the terms of the Revenue Procedure, the Service would not impose, in relevant part, informational return penalties for failure to comply with 26 U.S.C. § 6048 in past years. See Rev. Proc. 2003-11, §§ 2.01, 6.01.

5.     If a taxpayer was eligible to participate in the OVCI, the taxpayer was required to inform the Service of his or her intention to participate and submit certain materials within "150 days of the date of the letter informing the taxpayer that the Service ha[d] preliminarily determined that the taxpayer was preliminarily eligible to participate" in the OVCI (*i.e.*, Letter 3679).  Id. at § 6.01.

8036930.1

6.      Taxpayers were required to provide, among other things:

- complete and accurate amended or delinquent federal income tax returns for the periods ending after December 31, 1998, "which are supported by an explanation of previously unreported income or incorrectly claimed deductions or credits,"

- descriptions of all foreign bank accounts and assets "in which the taxpayer has or had any ownership or beneficial interest or that were controlled or owned by the taxpayer," and

- "complete and accurate amended or delinquent original information returns required by section[] . . . 6048 for which the taxpayer requests relief from penalties."  Id. at § 6.01(1)-(9).

7.      After submitting all material required by Revenue Procedure 2003-11, the taxpayer was required to execute a specific matters closing agreement.  Id. at § 7.01.

8.      In the closing agreement, the taxpayer was required: (1) to waive all defenses to the assessment and collection of tax, penalties, and interest under the OVCI; and (2) to agree that "the failure to disclose information that would make the taxpayer ineligible to participate in the [OVCI], or the failure to fully and accurately provide the information required by . . . this revenue procedure, constitute[d] a misrepresentation of fact" under 26 U.S.C. § 7121.  Rev. Proc. 2003-11, § 7.01.

8036930.1

9.      Finally, "[e]xecution of the closing agreement by the Commissioner [of Internal Revenue] constitute[d] a final determination under section 7121 that the taxpayer [was] eligible to participate" in the OVCI.  Rev. Proc. 2003-11, § 7.02.

**B.      *The Nances' Offshore Accounts***

10.     The Nances participated in offshore financial arrangements in the Bahamas, Costa Rica, and Grand Cayman for the attempted purpose of minimizing income subject to United States taxation.  (See Amend. Compl. ¶¶17-18, 25.)

11.     In "late 1999," the Nances were informed by the attorney who advised them on their offshore financial arrangements that "the offshore corporation transactions might 'no longer' be valid tax transactions."  (Id., ¶30.)

12.     Upon receipt of this information, the Nances ceased any further payments or transfers to their offshore accounts, but did not remove any money previously deposited, make any report to the Service, or "take any other action whatsoever" regarding their offshore financial activities.  (Id., ¶¶30-31.)

**C.      *Internal Revenue Service Letter 3679***

13.     On November 25, 2003, the Service sent Letter 3679 to the Nances informing them of the opportunity to participate in the OVCI.  (See id., Ex. A.)

14.     Letter 3679 informed the Nances that they were "currently under examination in connection with activities related to [their] offshore payment card or offshore financial arrangement."  (Id. at 1.)

8036930.1

15.     Letter 3679 stated that, if the Nances "accepted and complied with the terms of this letter," the Service would impose a civil fraud penalty for one "major" year, with other penalties applied in appropriate circumstances "based on our consideration of all of the facts and circumstances."  (Id.)

16.     The Letter also informed the Nances that, if they "accepted and complied with the terms of this letter," and if they filed delinquent or amended informational returns, the Service would not impose information return civil penalties for failure to comply with, among other provisions, 26 U.S.C. § 6048.  (See id.)

17.     In order to participate in the OVCI, Letter 3679 stated that the Nances were required to inform the Service of their intention to participate *within 30 days of receiving the letter*, and they were required to submit the items set forth in Section 6.01 of Revenue Procedure 2003-11 "as soon as possible and *no later than 150 days* of the date of this letter."  (Id. at 2-3 (emphasis added).)

18.     Of particular importance to this case, the Nances were required to submit "[c]omplete and accurate amended or delinquent original information returns required by IRC section[] . . . 6048 for which you are requesting relief from penalties," within 150 days of the letter, or no later than *April 24, 2004.*  (Id. at 2.)

19.     The Nances were also informed that they were required to execute a specific matters closing agreement (Form 906).  (See id. at 3.)

//

//

8036930.1

**D.**     ***Closing Agreement On Final Determination Of Tax Liability And Specific Matters***

20.     Upon receipt of Letter 3679, the Nances sought professional advice from an accountant and Frank Stockdale Carney, Esq.,[1] and chose to participate in the OVCI. (See Amend. Compl., ¶¶36, 38.)

21.     The Nances filed amended and delinquent income tax and informational returns for the tax periods ending December 31, 1997 through December 31, 2002.  (See id., Ex. C.)

22.     At the time the Nances received Letter 3679 on November 25, 2003, the 2003 tax year was not yet over.

23.     The Nances' 2003 Form 3520-A would not be due until March 15, 2004. See 26 U.S.C. § 6048(b).

24.     Because at the time the Nances received Letter 3679 their 2003 Form 3520-A was not yet due, the 2003 Form 3520-A could not be an amended or delinquent return.  (See Amend. Compl., Ex. A.)

25.     The Nances filed the 2003 Form 3520-A on November 4, 2004, or over seven months after the March 15, 2004 deadline and over six months after the April 24, 2004 deadline.  (See id., Ex. K.)

26.     With the assistance of counsel, the Nances negotiated and entered into a Closing Agreement On Final Determination Of Tax Liability And Specific Matters with

---

[1]Mr. Carney is plaintiffs' attorney in this case and signed the amended complaint. (See Amend. Compl. at 15.)

the Service, dated April 12, 2006, regarding their offshore financial activities for certain tax periods (*i.e.*, the Closing Agreement).  (See id., Ex. C.)

27.     The Closing Agreement incorporates Revenue Procedure 2003-11.  (See id. at 1.)

28.     The Nances admitted in the Closing Agreement that they used offshore financial arrangements "to avoid claiming rental income, interest, dividends and capital losses resulting in an increase in taxable income" for the tax periods ending December 31, 1997 through December 31, 2002.  (Id.)

29.     The Nances agreed in the Closing Agreement that they owed deficiencies in tax attributable to unreported tax for the tax periods ending December 31, 1997 through December 31, 2002.  (Id. at 2.)

30.     The Nances also agreed in the Closing Agreement to pay a penalty under 26 U.S.C. § 6663 at the rate of 75% for the tax period ending December 31, 1999.  (Id.)

31.     The Nances paid all taxes due ($1,245,396.52), a civil penalty ($446,344.50), and interest on both amounts.  (See Amend. Compl., ¶9; id., Ex. C at 2.)

32.     The parties agreed that the penalty under 26 U.S.C. § 6663 would apply at the rate of 0% for the tax periods ending December 31, 1997 and December 31, 1998, and would not apply for the periods ending December 31, 2000 through December 31, 2002. (See id., Ex. C at 2.)

8036930.1

33.     The Closing Agreement, which is dated February 23, 2006, states that it is

final and conclusive except "if it relates to a tax period ending after the date of this

agreement." (Id. at 4.)

34.     The Closing Agreement neither refers to, nor makes mention of, the tax

period ending December 31, 2003 or the 2003 Form 3520-A.  (See id.)

**E.      Penalty Assessment**

35.     Under 26 U.S.C. § 6048, the 2003 Form 3520-A was required to be filed by

March 15, 2004.

36.     Under the terms of Letter 3679, the 2003 Form 3520-A was required to be

filed no later than April 24, 2004, which was 150 days from the date the letter was

issued.  (See Amend. Compl., Ex. A at 2.)

37.     Because the Nances did not file the 2003 Form 3520-A until November 4,

2004, they were assessed a penalty under 26 U.S.C. § 6677 in the amount of $156,478.00

for failure to timely file Form 3520-A for the tax period ending December 31, 2003.

**STANDARD OF REVIEW**

In reviewing the United States' motion to dismiss under Rule 12(b)(6), the Court

must accept "all well-pleaded allegations in the complaint as true," and should

"'consider[s] the factual allegations in [the] complaint to determine if they plausibly

suggest an entitlement to relief.' " Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011)

(quoting Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009)).  While a complaint "does not need

detailed factual allegations," the Nances' obligation "to provide the 'grounds' of [their]

9

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief," and the complaint should be dismissed.  Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## ARGUMENT

### I.      THE 2003 FORM 3520-A WAS NOT "PART AND PARCEL" OF ANY AGREEMENT BETWEEN PLAINTIFFS AND THE SERVICE

The Nances do not dispute that they late-filed the 2003 Form 3520-A.  Rather, they contend that the late-filing penalty "contravened the terms of Letter 3679 and the Closing Agreement."  (Amend. Compl., ¶54.)  They further contend that the "2003 Form 3520-A return was filed with the understanding that it was part and parcel of a Voluntary Compliance Initiative under which the Plaintiffs over a couple of years worked with an assigned Revenue Officer to determine what returns were required, to file such returns, and to pay back taxes associated with foreign bank accounts."  (Id., ¶58(b).)  But the tax period ending December 31, 2003 – and, by extension, the 2003 Form 3520-A – was never part of any agreement between the Nances and the Service. The Nances' contention that the 2003 Form 3520-A was somehow "part and parcel" of their agreement with the United States is meritless and must be rejected.

8036930.1

Closing agreements are authorized under 26 U.S.C. § 7121, "which allows the Commissioner [of Internal Revenue] to enter into agreements in writing with taxpayers to determine their total tax liability for 'any internal revenue tax for any taxable period.'" Marathon Oil Co. v. United States, 42 Fed. Cl. 267, 273 (Ct. Fed. Cl. 1998) (quoting 26 U.S.C. § 7121; 26 C.F.R. § 301.7121-1 (1993)). A closing agreement is a contract that is subject to ordinary principles of contract law. See Rink v. Comm'r, 47 F.3d 168, 171 (6th Cir. 1995) ("The closing agreement is a contract and its interpretation is a matter of law to be resolved by the court"); In re Spendthrift Farm, 931 F.2d 405, 407 (6th Cir. 1991); Marathon Oil, 42 Fed. Cl. at 273; see also United States v. National Steel Corp., 75 F.3d 1146, 1150 (7th Cir. 1996) (closing agreements are "contracts in the legal sense of the term, because they contain binding promises"). As such, unless an ambiguity is contained *in the Closing Agreement itself*, interpretation of its meaning is limited to the four-corners of the agreement, and this Court may not consider parol evidence. See Rink, 47 F.3d at 171 ("if the essential terms of [a closing] agreement are deemed unambiguous, a court will not look beyond the four corners of the document to determine the parties' intent"); Marathon Oil, 42 Fed. Cl. at 275 (citing Restatement (Second) of Contracts § 214 (1979)).

The Closing Agreement, which the Nances negotiated and entered into with the assistance of counsel, is unambiguous as to all matters, including the tax years it covers. The Closing Agreement is limited to the specific matters contained within the agreement, as required by Service policy. Under Revenue Procedure 68-16, which

8036930.1

governs closing agreements, closing agreements "should . . . specify the years involved." Rev. Proc. 68-16, § 7.04. The Closing Agreement makes no mention of the tax year ending December 31, 2003 or the 2003 Form 3520-A. It specifically and consistently refers only to the tax periods ending December 31, 1997 through December 31, 2002. The Complaint contains no allegation that the Closing Agreement is in any way ambiguous or otherwise unclear. Given the lack of ambiguity in the Closing Agreement, as well as the requirements of Revenue Procedure 68-16, the absence of any reference to the 2003 tax year is telling. Under ordinary principles of contract law, which govern interpretation of the Closing Agreement, the 2003 tax year and the 2003 Form 3520-A *were not included* in the Closing Agreement.[2]  See Rink, 47 F.3d at 171.

Similarly, the OVCI and Letter 3679 contain specific terms with which the Nances were required to comply in order to participate in the OVCI. The Nances assert that they "complied with each detail" of the OVCI and the Closing Agreement, but they are wrong. (See Amend. Compl. ¶¶8, 42.) Critically, the Nances were required to file all informational returns within 150 days of receipt of Letter 3679.[3]  (See id., Ex. A at 2.)

_____

[2] The Nances filed the 2003 Form 3520-A more than 17 months before the Closing Agreement was executed. (See Amend. Compl., Exs. A, C.) The Nances could have requested inclusion of the 2003 Form 3520-A within the terms of the Closing Agreement, but did not do so.

[3] Plaintiffs incorrectly contend that the 150-day period refers to the time permitted to inform the Service of their intention to participate in the OVCI. (See Amend. Compl. 58(e).) Letter 3679 informed the Nances that they had 30 days to inform the Service of their intention to participate in the OVCI and that they had 150 days to provide all of the required materials. (See id., Ex. A.)

12

Failure to comply with that requirement would disqualify a taxpayer from the OVCI. See Rev. Proc. 2003-11, § 7. There is no dispute that the Nances did not timely file the 2003 Form 3520-A within that 150-day window (filed November 4, 2004 but required to be filed April 24, 2004). Thus, to the extent that the OVCI or Letter 3679 are part of an agreement with the Service, the Nances failed to comply with the conditions of the offer, which means that no agreement existed with regard to the 2003 tax year or the 2003 Form 3520-A. See Restatement (Second) of Contracts § 36(2) (1981) ("an offeree's power of acceptance [of a contract] is terminated by the non-occurrence of any condition of acceptance under the terms of the offer").

But even more fundamentally, the 2003 Form 3520-A could not have been part of the OVCI, because the 2003 tax year had not yet concluded when the Nances were informed of the program on November 25, 2003. The OVCI gave taxpayers the opportunity to avoid failure-to-report and late-filing penalties for *prior periods* that had already ended. See Rev. Proc. 2003-11, § 1.01, 1.02, 2.01, 6.01. In essence, the OVCI was intended to give the Nances relief for their past errors and not their continued failures in the future. After receipt of Letter 3679, the Nances were aware, to the extent they were not previously, that they were obligated to file Form 3520-A for 2003, and they had over four months to prepare and timely file the return. (See Amend. Compl. ¶50, Ex. A at 1.) At the time they received Letter 3679, the Nances were not liable for any failure-to-file or late-filing penalties for the 2003 Form 3520-A, therefore the 2003 tax year could not have been part of the OVCI.

The Nances appear to argue that the Closing Agreement somehow governed all tax periods before the execution of the Closing Agreement on April 12, 2006.  (See Amend. Compl., ¶58(d) ("The Closing Agreement . . . was conclusive as to all tax periods except 'if it relates to a tax period ending after the date of this agreement'"); see also id., ¶¶52-53.)  The Nances' argument is misleading and meritless.

Nothing in the Closing Agreement states that it is conclusive as to *all* tax periods *before* the date of the agreement.  The actual language from the Closing Agreement is as follows: "This agreement is final and conclusive except: . . . (3) if it relates to a tax period ending after the date of this agreement, it is subject to any law, enacted after the agreement date, that applies to that tax period."  (Id., Ex. C at 4.)  That general provision, which is included in all closing agreements, applies only if the agreement relates to tax periods ending after the date the agreement is made (*i.e.*, an agreement dated June 11, 2012 regarding tax liabilities for the period ending December 31, 2012).  When a closing agreement relates to a period ending after the entry date, the agreement cannot resolve all issues with respect to any tax liability for the period because it has not yet ended.  See 26 C.F.R. § 301.7121–1(b)(3).  The general provision is added to closing agreements to alert taxpayers to that fact.

The Closing Agreement sets forth the specific tax periods at issue in the agreement, as required by Revenue Procedure 68-16, and those periods all ended before the agreement was executed.  The provision relied upon by the Nances, which refers only to tax years ending after April 12, 2006, is inapplicable to this dispute, which

14

pertains to the 2003 tax year.  As such, the Closing Agreement is final and conclusive only as to the tax periods and liabilities contained in the Closing Agreement.

## II.   PLAINTIFFS DID NOT HAVE REASONABLE CAUSE TO LATE FILE THE 2003 FORM 3520-A BECAUSE THEY FAILED TO COMPLY WITH THE TERMS OF THE OVCI, LETTER 3679, AND THE CLOSING AGREEMENT

As discussed, the Nances were assessed a penalty under  26 U.S.C. § 6677(b) for failure to timely file the 2003 Form 3520-A.  Under section 6677(d), no penalty will be imposed if the failure to comply with the information reporting requirements under section 6048(b) is due to reasonable cause and not willful neglect.  The Supreme Court has defined reasonable cause as "ordinary business care and prudence."  United States v. Boyle, 469 U.S. 241, 246 (1985).  The Nances bear the burden of establishing reasonable cause.  Id. at 245.

The Nances contend that they had reasonable cause for late filing due to their reasonable reliance representations made in on the OVCI, Letter 3679, and the Closing Agreement.  (See Compl., ¶¶54, 58(g)-(h).)  As a primary matter, the Nances could not have reasonable cause to late-file the 2003 Form 3520-A based on representations made in the Closing Agreement, because the agreement was not executed until over 17 months after they filed their return.  The Nances fair no better in their attempt to rely upon the OVCI and Letter 3679.  The assertions contained within the complaint demonstrate that the Nances did not exercise "ordinary business care and prudence" with regard to the offshore financial arrangements and their participation in the OVCI.

15

The Nances, therefore, do not have reasonable cause for the late filing of the 2003 Form 3520-A, and the penalty was properly assessed against them.

Taxpayers with offshore reporting requirements, like plaintiffs, are statutorily obligated to file Forms 3520-A regardless of whether they are aware of such requirements or not.  See 26 U.S.C. § 6048.  Ordinarily, taxpayers have two-and-a-half months, from January 1 to March 15, to complete and file Form 3520-A.  As discussed, the Nances were aware before the end of the 2003 tax year of their obligation to file Form 3520-A.  But they did not file their 2003 Form 3520-A by March 15, 2004.  Letter 3679 required the Nances to file all of their informational returns, including their 2003 Form 3520-A within 150 days, which was April 24, 2004.  But they did not file by that date either.  Rather, despite the assistance of counsel and an accountant, it took them more than 10 months to complete the 2003 Form 3520-A.

By filing 2003 Form 3520-A more than 150 days after receipt of Letter 3679, the Nances failed to comply with the requirements of the OVCI and Letter 3679.  (See infra at 3-8.)  Their actions, therefore, contravened the express terms of the very documents upon which they contend they reasonably relied.  Letter 3679 made the Nances were well aware of the requirement to file their 2003 Form 3520-A within the 150-day period.  The Nances also were represented by an accountant and attorney, who both presumably advised the Nances that failure to file their informational returns within the 150-day period would be subject them to additional penalties.  Their failure to file

8036930.1

within the 150-day period is sufficient to demonstrate that the Nances did not exercise "ordinary business care and prudence" with respect to the 2003 Form 3520-A.

Moreover, the Nances were told by their attorney as early as 1999 that their offshore financial arrangements "may no longer" be valid.  (See Amend. Compl., ¶30.) While the Nances ceased any further transfer of funds to their various offshore entities, they did nothing else with regard to those entities; for example, they did not remove any money previously deposited, make any report to the Service, or "take any other action whatsoever" regarding their offshore financial activities.  (Id., ¶¶30-31.) According to the Nances, they did nothing until they received Letter 3679.  (See id., ¶31.)  Rather, the Nances contend that, until they received Letter 3679, the did not have "any information that their former participation in the foreign bank accounts might be in question under the Internal Revenue Code."  (Id., ¶50.)  The Nances' conflicting assertions – that, on the one hand, they were informed their offshore activities may not be valid but, on the other, did not know that those same activities "might be in question" – beggar belief.

The Nances are left with only their erroneous assertion that alleged representations made by Service employees during the negotiation of plaintiffs' participation in the OVCI demonstrate that they had reasonable cause for not timely filing their 2003 Form 3520-A.  (See id. ¶¶37-40, 42-43, 58(e)-(h); id., Exs. G- I.) Statements made by agency representatives, including those from Service employees, cannot excuse individuals from their obligation to comply with the law.  See Sidell v.

8036930.1

Comm'r, 225 F.3d 103, 111 (1st Cir. 2000) ("the IRS must speak with a single voice, that is, through formal statements of policy such as regulations or revenue rulings[, therefore] statements by individual IRS employees cannot bind the Secretary") (citations omitted). And, as discussed, the Nances were statutorily obligated to file their 2003 Form 3520-A regardless of whether they were told anything different by Service employees. See 26 U.S.C. § 6048. Therefore any alleged representations made by Service employees are irrelevant and cannot excuse plaintiffs' failure to timely file.

The Nances had ample opportunity to rectify their tax issues but failed to take any action. The Nances were aware of their obligation to file the 2003 Form 3520-A before the end of the 2003 tax year and months before the due date. Yet they stilled failed to file before March 15, 2004 or even by April 24, 2004. Under any measure, the Nances' inaction, no matter the reason, demonstrates that they failed to exercise "ordinary business care and prudence." This Court, therefore, cannot excuse the late-filing of the 2003 Form 3520-A for reasonable cause under section 6677(d).

//

//

//

//

//

//

//

18

## CONCLUSION

For the foregoing reasons, the United States' motion to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure should be granted.

Date:  October 25, 2012

Respectfully submitted,

EDWARD L. STANTON, III
United States Attorney

KATHRYN KENEALLY
Assistant Attorney General

 /s/ Christopher J. Williamson
CHRISTOPHER J. WILLIAMSON
Trial Attorney, Tax Division
United States Department of Justice
P.O. Box 227
Ben Franklin Station
Washington, DC 20044
Tel:  (202) 307-2250
Fax: (202) 514-6866
christopher.j.williamson@usdoj.gov

*Counsel for the United States*

19

8036930.1

<u>CERTIFICATE OF SERVICE</u>

IT IS HEREBY CERTIFIED that service of the foregoing UNITED STATES' BRIEF IN SUPPORT OF ITS MOTION DISMISS PLAINTIFFS' AMENDED COMPLAINT has been made on October 25, 2012 by ECF filing and served thereby on interested parties registered with the system, and by placing a true and correct copy of the document in the United States mail, postage prepaid, addressed as follows:

Frank N. Stockdale Carney
L. Clayton Culpepper
Evans/Petree PC
1000 Ridgeway Loop Rd., Suite 200
Memphis, TN 38120

/s/ Christopher J. Williamson
CHRISTOPHER J. WILLIAMSON

20

8036930.1