IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

DAVID W. NANCE and
PRISCILLA LYNN NANCE,

    Plaintiffs,

v.                                No. 12-1064

UNITED STATES OF AMERICA,

    Defendant.
_____

ORDER DENYING DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT
_____

*INTRODUCTION*

       This matter was initially brought by the Plaintiffs, David W. Nance and Priscilla Lynn Nance (the "Nances"), on March 9, 2012 against the United States of America (sometimes referred to herein as the "Government"). (D.E. 1.) On August 29, 2012, they filed an amended complaint, seeking a refund of tax penalties. (D.E. 20.) Before the Court is the Defendant's motion to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (D.E. 25.)

*STANDARD OF REVIEW*

       The Rule permits a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "When a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008). "[T]he district court must construe the

complaint in the light most favorable to the plaintiff and must accept all the factual allegations contained in the complaint as true." Paige v. Coyner, 614 F.3d 273, 277 (6th Cir. 2010) (citing Lambert v. Hartman, 517 F.3d 433, 439 (6th Cir. 2008)). "In order to survive a Rule 12(b)(6) motion to dismiss, [a plaintiff's] complaint need contain only 'enough facts to state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

## *FACTS ALLEGED*

The Plaintiffs have alleged the following facts. The Nances reside in Milan, Tennessee and own and operate Nance Tool & Die, Inc., a Tennessee corporation. Their attorney, Robert Bly, of Knoxville, Tennessee, who held himself out as an experienced tax adviser, informed the Plaintiffs that they could minimize income subject to federal taxation by forming offshore corporations domiciled in the Bahamas. To that end, he assisted them in forming Bahamian-domiciled Philco Investments, Ltd. ("Philco"), of which Mr. Nance was principal shareholder. Thereafter, Nance transferred funds from Nance Tool & Die's corporate account to Philco's bank account in Nassau. On Bly's advice, Plaintiffs also incorporated Luxum International, Ltd. in the Bahamas and a trust in Costa Rica. At the time, Bly assured the Plaintiffs their investments were proper.

In late 1999, however, counsel contacted the Nances to inform them that the offshore transactions may "no longer" be valid from a tax standpoint. Consequently, they ceased all their Bahamian and Costa Rican operations and deposits. Bly did not instruct Plaintiffs to remove funds from the offshore accounts, make reports to any agency, including the Internal Revenue Service ("IRS" or the "Service"), or take any other action.

On November 25, 2003, the IRS issued Letter 3679 to the Plaintiffs, advising that they were

under examination by the agency in connection with their offshore financial arrangements. They were invited to participate in the Voluntary Compliance Initiative, a program under which they could minimize their exposure to penalties by providing certain information to the Government. If they complied, a civil fraud penalty would only be imposed for the "major" year. For any other year, only a delinquency or accuracy-related penalty would be assessed. The letter further stated that "[a]dditionally, we will not impose information return civil penalties for failure to comply with [Internal Revenue Code ("IRC")] sections . . . 6048 [which requires reporting with respect to foreign trusts], if you file delinquent or amended information returns." (D.E. 20-1 at 1.) The letter provided that

> civil penalties for violations involving Reports of Foreign Bank and Financial Accounts (FBAR) will be imposed for *only* one year and we may resolve the FBAR penalty for less than the statutory amount based on the facts and circumstances of your case. Except for the FBAR penalty in one year, to which you will be expected to agree, civil penalties will not be imposed for failure to file an FBAR, for filing a false FBAR, or failing to keep records you are required to keep, if you file delinquent or amended FBARs.

(Id.). Letter 3679 instructed that, in order to participate in the program, Plaintiffs had to advise the IRS within thirty days of the date of the letter of their intention to participate. All required materials were to be submitted within 150 days. The agency contact person was listed therein as Elysia A. Wilcox.

After consulting with an attorney[1] and their accountant, the Nances opted to participate in the initiative. On December 8, 2003, they provided a Form 2848 to their accountant, Tom Shelton, permitting him to discuss their tax issues with the IRS. The Nances submitted the same form to their

---

[1] The amended complaint does not indicate whether this individual was Bly, Frank Stockdale Carney, *see infra*, or someone else.

3

current attorney, Frank Stockdale Carney, on March 18, 2004. The form included power to discuss issues related to their income taxes and civil penalties for tax years 1996 through 2003. By letter dated March 24, 2004, Carney advised Wilcox that he was working with the Plaintiffs on a response to her letter and enclosed a copy of the Form 2848. In a subsequent correspondence dated April 9, 2004, Carney informed Wilcox of the facts and circumstances of Plaintiffs' offshore transactions and sought to begin the process of filing the necessary documents to be in compliance with the initiative. In the early summer of 2004, Carney contacted Janet Cunningham, the revenue agent assigned to the Nances' case, stating:

> As you and I discussed, there may be some informational returns, such as reports in IRC section[] . . . 6048, that should have been filed in the past in connection with the foreign bank accounts. At this time, the Nances no longer maintain any of the foreign bank accounts. You mentioned that in your review you would determine whether these informational returns are now moot and we do not need to file those, or whether you want us to file any of those applicable returns. As I confirmed, if you feel you need us to file the applicable informational returns, please let me know and we will prepare those returns.

(Id. at 33.) Plaintiffs worked diligently to determine whether information reported for years 1997 through 2000 was correct and voluntarily filed amended returns based on professional advice received in 2003 and 2004 and at the request of the IRS. As part of the Voluntary Compliance Initiative, the Nances worked with the Service to formulate a Closing Agreement. Carney met with Cunningham on July 2, 2004, during which they discussed the remaining and amended returns that would be required. Carney took notes at the meeting that reflected his clients would need to file a Form 3520-A for the years 1997 through 2004, and that 2004 would be the final return. In a November 4, 2004 letter to Cunningham, Carney submitted, among other things, a Form 3520-A for the years 1997 through 2003. He stated therein that the submission was "[i]n response to [her] request at [their] last conference for additional information and reporting returns . . ." (Id. at 35.)

Otherwise, the Nances would have been required, pursuant to the 2003 Form 3520-A's filing instructions, to mail the form to the IRS Center located in Philadelphia, Pennsylvania.

On February 23, 2006, Plaintiffs executed a Closing Agreement with the IRS, pursuant to which they filed Forms 3520, 3520-A, 5472 and TD F 99-22.1 for the years 1999 through 2002. Under the terms of the Closing Agreement, Plaintiffs paid $1,245,396.52 in taxes due and $446,344.50 in penalties for 1999, along with interest. The Closing Agreement was signed by the Commissioner of Internal Revenue on April 12, 2006. The document provided in part that "[t]his agreement is final and conclusive except . . . if it relates to a tax period ending after the date of this agreement, it is subject to any law, enacted after the agreement date, that applies to that tax period." (Id. at 9.)

On September 11, 2006, the Service issued Notice Number CP15 to the Plaintiffs, assessing an additional penalty in the amount of $156,478.00 for the 2003 tax year based on their failure to timely file the Form 3520-A due March 15, 2004. In subsequent notices, numbered CP503 and CP504, dated October 16, 2006 and November 20, 2006, respectively, the Nances were advised of interest added to the penalty, bringing the total balance to $158,897.00. Plaintiffs filed a Request for Penalty Waiver with the Taxpayer Advocate on June 1, 2007, citing reasonable cause for late filing of Form 3520-A. The request was denied on June 26, 2007.

On August 8, 2007, the Nances filed a Written Protest Appeal, requesting reconsideration of the determination based on reasonable cause. A conference was held with an appeals officer on March 11, 2008. The appeal was denied on October 20, 2009. A month later, the Plaintiffs filed a claim for credit for the period ending December 31, 2003, which the IRS disallowed on March 29, 2010.

The Plaintiffs submit that they are entitled to relief on the following grounds:

(a) The penalty assessed against Plaintiffs by Defendant is improper because Plaintiffs filed Forms 3520, 3520-A, 5472 and TD 99-22.1 for tax years 1999-2002 after receiving notice regarding the Voluntary Compliance Initiative dated November 25, 2003; however, Plaintiffs received a late filing fee for 2003 Form 3520-A.

(b) The 2003 Form 3520-A return was filed with the understanding that it was part and parcel of a Voluntary Compliance Initiative under which the Plaintiffs over a couple of years worked with an assigned Revenue Officer to determine what returns were required, to file such returns, and to pay back taxes associated with foreign bank accounts.

(c) The Letter 3679 and the Voluntary Compliance Initiative had assured the Plaintiffs that a civil fraud penalty and a civil penalty for failing to file an FBAR would be assessed for only one year, and the Plaintiffs paid such penalties for 1999 as stated in the Closing Agreement. Letter 3679 further assured Plaintiffs that the offer contained therein pertained to years ending after December 31, 1998.

(d) The Closing Agreement, executed by the Plaintiffs and the Commissioner, included the penalties assessed with respect to tax year ending December 31, 1999 and further stated that it was conclusive as to all tax periods except "if it relates to a tax period ending after the date of this agreement" and such Closing Agreement was last executed by the Commissioner on April 12, 2006.

(e) Plaintiff's attorney, Mr. Carney, first contacted Ms. Elysia A. Wilcox by letter dated March 24, 2004, about the Plaintiffs' participation in the Voluntary Compliance Initiative, which was within the 150-day period permitted by Letter 3679.

(f) Mr. Carney's and the Plaintiffs' understanding was that the Service would determine what, if any, information returns and amended returns were required and would notify Mr. Carney and the Plaintiffs, at which time the Plaintiffs would file such returns. In fact, Plaintiffs filed such returns upon the instruction of the Service's agent, including returns for 2003, in finalizing the Voluntary Compliance Initiative. All information returns, including the 2003 Form 3520-A, were mailed as one single packet to the agent to conclude the Voluntary Compliance Initiative.

(g) Under the Plaintiffs' reasonable reliance on Letter 3679, the Closing Agreement, and the Voluntary Compliance Initiative, no assessment should ever have been made for 2003 because the Plaintiffs' understanding was that any penalties for late filing of all necessary information returns related to the Plaintiffs' offshore transactions were covered by such Letter 3679, the Closing Agreement, and the Voluntary Compliance Initiative.

(h)     Alternatively, the Plaintiffs should be granted the requested relief because they had reasonable cause for failing to timely file the 2003 Form 3520-A, which was not due to willful neglect.

(D.E. 20 at 13-15.)

*ASSERTIONS OF THE PARTIES AND ANALYSIS*

The Government first submits that the tax period ending December 31, 2003 and, by extension, the 2003 Form 3520-A, the late filing of which was the basis for the penalty at issue, was not, as Plaintiffs claim, part of any agreement between the Nances and the IRS. Under 26 U.S.C. § 7121, the Service "is authorized to enter into an agreement in writing with any person relating to the liability of such person . . . in respect of any internal revenue tax for any taxable period." 26 U.S.C. § 7121(a). Closing agreements under the statute are "final and conclusive," except on a showing of "fraud or malfeasance, or misrepresentation of a material fact[.]" 26 U.S.C. § 7121(b). Accordingly, "closing agreements are binding on the parties as to the matters agreed upon and may not be modified or disregarded in any proceeding unless there is a showing of fraud, malfeasance, or misrepresentation of a material fact." In re Spendthrift Farm, Inc., 931 F.2d 405, 407 (6th Cir. 1991); *see also* In re Crowell, 258 B.R. 885, 888 (E.D. Tenn. 2001) (same), *aff'd*, 305 F.3d 474 (6th Cir. 2002).

Closing agreements under § 7121(a) "are contracts and generally are interpreted under ordinary contract principles." Roach v. United States, 106 F.3d 720, 723 (6th Cir. 1997). "An ambiguous closing agreement will be interpreted in accord with the surrounding circumstances." Id. "[I]f the essential terms of an agreement are deemed unambiguous, a court will not look beyond the four corners of the document to determine the parties' intent." Rink v. Comm'r of Internal Revenue, 47 F.3d 168, 171 (6th Cir. 1995).

7

The Defendant points out that the Closing Agreement entered into by the Plaintiffs referred only to the tax years 1997 through December 31, 2002 and that, while the Nances could have requested inclusion of the 2003 tax year within the agreement's terms, they did not do so. Although they do not dispute that the Closing Agreement did not specifically mention 2003 returns, the Plaintiffs insist that, at a minimum, there is some ambiguity as to whether it applied only to years 1997 through 2002 or to all tax years other than those ending after the date of the agreement. Thus, they submit that the Court is permitted to consider parol evidence -- in this case, the parties' conduct and Letter 3679 -- in construing the Closing Agreement.

Even if the Court agreed with the Government that the 2003 Form 3520-A filing did not fall within the ambit of the Closing Agreement, 26 U.S.C. § 6677, which provides for the imposition of penalties for failure to file information with respect to foreign trusts and under which the penalty here was assessed, states that "[n]o penalty shall be imposed . . . on any failure which is shown to be due to reasonable cause or not due to willful neglect." 26 U.S.C. § 6677(d). "Reasonable cause" requires the taxpayer to demonstrate that he "exercised ordinary business care and prudence but nevertheless was unable to file the return within the prescribed time." United States v. Boyle, 469 U.S. 241, 246, 105 S. Ct. 687, 690, 83 L. Ed. 2d 622 (1985) (internal quotation marks omitted). "Willful neglect" is defined in this context as "conscious, intentional failure or reckless indifference." Id. at 245, 105 S. Ct. at 690. The taxpayer is charged with the "heavy burden" of showing both reasonable cause and absence of willful neglect.[2] Id., 105 S. Ct. at 689-90; Shafmaster

---

[2] The Government does not argue that the Nances' failure to file the form at issue was the result of willful neglect and nothing currently in the record raises an inference thereof. Thus, for purposes of the instant motion, the Court will assume Plaintiffs did not willfully neglect their tax liability and will focus on whether they have passed muster under Rule 12(b)(6) on the issue of reasonable cause.

8

v. United States, 707 F.3d 130, 137 (1st Cir. 2013).

In attempting to meet their burden, the Nances argue that (1) Bly did not indicate to them that they needed to report any transactions to the IRS or take other action in connection with prior offshore transactions, advice upon which they relied, and that (2), upon receipt of Letter 3679 and knowledge of filing requirements relating to the offshore transactions, Plaintiffs immediately sought advice from their accountant and new attorney, who opened a dialogue with the IRS, which constituted the exercise of ordinary business care. The Government discounts the first of the proffered bases, contending that Plaintiffs could not have relied upon advice regarding when a 2003 tax form should have been filed when Bly ceased representing them in 1999. However, it is not clear from the record before the Court when Bly's representation ceased. Further, "[a]lthough relying on an expert for the ministerial task of filing a tax return does not constitute reasonable cause, relying on an expert's advice concerning substantive questions of tax law, such as whether a liability exists in the first instance, may constitute reasonable cause." Estate of Liftin v. United States, 101 Fed. Cl. 604, 608 (Fed. Cl. 2011) (citing Boyle, 469 U.S. at 250, 105 S. Ct. 687) (internal quotation marks omitted); *see also* McMahan v. Comm'r of Internal Revenue, 114 F.3d 366, 369 (2d Cir. 1997) ("reliance on a mistaken legal opinion of a competent tax adviser -- a lawyer or accountant -- that it was unnecessary to file a return constitutes reasonable cause"). The Nances may be able to prove facts demonstrating that they relied in good faith on Bly's failure to advise them of the need to file a Form 3520-A for tax year 2003 and that they did not otherwise know during the period of his representation that such a filing was required.

When they received Letter 3679, Plaintiffs became aware of their obligation to make certain filings with the Service. As noted above, their subsequent counsel, Mr. Carney, met with revenue

officer Cunningham in July 2004, four months after the Form 3520-A's March 2004 due date. According to the amended complaint, "Mr. Carney and Ms. Cunningham discussed the remaining returns and amended returns that would be required. Mr. Carney took notes from such meeting, noting that the Plaintiffs would need to file a Form 3520-A for the years 1997 through 2004 (stating that 2004 would be the final return)." (D.E. 20 ¶ 42.) Carney provided the form to Cunningham directly pursuant to her request in November 2004.

"Reasonable cause may exist when a taxpayer files a return after the due date, but does so in reliance on an expert's erroneous advice." Estate of Liftin, 101 Fed. Cl. at 608. Reliance on the erroneous advice of an IRS officer or employee may also constitute reasonable cause. *See* McMahan, 114 F.3d at 369; Tesoriero v. Comm'r of Internal Revenue, No. 18959-10, 2012 WL 3964976, at *4 (U.S. Tax Ct., Sept. 11, 2012). Viewing the facts alleged in the light most favorable to the Plaintiffs, the Court finds they have stated a plausible claim that their failure to timely file the 2003 Form 3520-A was due to reasonable cause, based on Mr. Carney's communications with Ms. Cunningham.

*CONCLUSION*

For the reasons set forth herein, the Defendant's motion to dismiss is DENIED.

IT IS SO ORDERED this 11th day of April 2013.

s/ J. DANIEL BREEN  
UNITED STATES DISTRICT JUDGE